UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
BRYAN K. WILSON,                    )
                                    )
            Petitioner,             )
                                    )
      v.                            )    Civil Action No. 11-2218 (JDB)
                                    )
TERRY O'BRIEN,                      )
                                    )
            Respondent.             )
_____ )

**MEMORANDUM OPINION**

This matter is before the Court on petitioner's petition for a writ of habeas corpus and respondent's response to the Court's order to show cause. For the reasons discussed below, the petition will be denied, and this action will be dismissed.

I.  BACKGROUND

Petitioner "was convicted of first-degree premeditated murder while armed and of several weapons charges in connection with the death of his wife Inga Wilson." *Wilson v. United States*, 995 A.2d 174, 177 (D.C. 2010). The District of Columbia Court of Appeals affirmed the convictions on direct appeal, *see id.*, and issued its mandate on May 28, 2010. Resp't's Opp'n to Pet'r's Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Resp't's Opp'n"), Ex. A (Event Docket entry dated 05/28/2010). Petitioner filed a *pro se* motion to recall the mandate on August 11, 2010, *id.*, Ex. A (Event Docket entry dated 08/17/2010), in which he raised one claim of ineffective assistance of appellate counsel. The Court of Appeals summarily denied the

1

motion on September 9, 2010.  *Id.*, Ex. C (Order, *Wilson v. United States*, No. 07-CF-1097 (D.C. Ct. App. Sept. 9, 2010) (per curiam)).

Now before the Court is a petition for a writ of habeas corpus which claims ineffective assistance of appellate counsel on the direct appeal of petitioner's convictions to the District of Columbia Court of Appeals.  *See* Pet. at 5.  For the reasons discussed below, the petition will be denied.

## II.  DISCUSSION

### A.  *The Recorded Conversation of January 6, 2005*

Evidence introduced at petitioner's criminal trial showed:

> [O]n the afternoon of December 13, 2003, Inga Wilson was found dead in the passenger seat of her Ford Expedition, which was parked in the 3000 block of Adams Street, N.E.  She had been shot four times in the head and died sometime around 12:00 a.m. on December 13, 2003.  After police arrived on the scene, they discovered that both the vehicle and the decedent had been reported missing.  Police contacted [petitioner] to inform him of his wife's death and later that day interviewed him to gather information regarding the decedent's death.

*Wilson*, 995 A.2d at 177-78.  In the course of investigating the murder, Bradley Garrett, an agent of the Federal Bureau of Investigation, "asked [petitioner's] long time friend, Tracy Thompson, to become an informant and to have two recorded conversations with [him] for the purpose of gaining a confession or information concerning the crime."  Resp't's Opp'n, Ex. B (Appellant's Pro Se Motion to Recall Mandate) at 2.  The second conversation was introduced at trial.

> Tracy Thompson[] told investigators that he had given [petitioner] a gun.  Agent Garrett further testified that Thompson offered to allow agents to place video and audio recording equipment in his car and to engage appellant in a conversation that investigators could record.  During a recorded conversation that took place on

2

> January 6, 2005, [petitioner] denied killing his wife but told Thompson that he had thrown the gun that Thompson had given him into the Patuxent River right after the police called him to inform him that his wife's body had been found.

*Wilson*, 995 A.2d at 179. "Thompson repeatedly expressed dismay or anger that [petitioner] had used the gun Thompson gave him . . . to kill Inga Wilson, making both [petitioner] and Thompson targets of the police investigation." *Id.* at 182.

Petitioner understood Thompson's anger as "stem[ming] from [his] belief that [petitioner] had committed the crime." Resp't's Opp'n, Ex. B at 4. Early in the conversation, Thompson stated that he would "fuck [petitioner] up," *id.*, Ex. D (Transcript of January 6, 2005 recorded conversation) at 1, a statement petitioner construed as a "threat of physical attack if [petitioner] said the wrong thing" to Thompson, *id.*, Ex. B at 2. "Thompson . . . grabbed [him] and began punching [him] in the face and head." *Id.*, Ex. B at 2; *see* Pet. at 8. Petitioner claimed that "[f]rom that point on [his] objective was to say anything that would stop any further physical abuse at the hands of the FBI informant." Resp't's Opp'n, Ex. B at 4. Specifically, he believed that Thompson "only agree[d] to stop the assault [sic] under the condition that petitioner" offer information about his possession and disposal of the gun. *Id.*

The government relied on the recorded conversation "to prove that Thompson gave [petitioner] a gun a week before Inga Wilson's murder." *Wilson*, 995 A.2d at 179. From this and other evidence, the District of Columbia Court of Appeals affirmed petitioner's convictions, finding that "there was an array of evidence from which the jury could reasonably infer, and could conclude beyond a reasonable doubt, that [petitioner] murdered his wife." *Id.* at 188.

*B. Petitioner's Ineffective Assistance of Appellate Counsel Claim*

1. Relief Under 28 U.S.C. § 2254

A District of Columbia prisoner may raise an ineffective assistance of appellate counsel claim by filing a motion in the District of Columbia Court of Appeals to recall its mandate. *See Williams v. Martinez,* 586 F.3d 995, 999 (D.C. Cir. 2009); *Watson v. United States,* 536 A.2d 1056, 1060 (D.C. 1987) (en banc). Petitioner has done so, and now may "get a second bite at the apple in federal court," *Williams*, 586 F.3d at 1000, on review of this habeas petition "in light of the standard set forth in 28 U.S.C. § 2254," *id.* at 1002. Habeas relief under § 2254 may be available "with respect to any claim that was adjudicated on the merits in [District of Columbia] court proceedings [if] the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Petitioner may prevail on his claim of ineffective assistance of appellate counsel if he first shows "that his counsel was objectively unreasonable . . . in failing to find arguable issues to appeal -- that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (internal citation omitted). He must also show prejudice -- "[t]hat is, he must show a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Id.* (citation omitted); *see Strickland v. Washington*, 466 U.S. 668, 694 (1984) (stating that a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Review of counsel's performance is deferential, and petitioner may prevail only if appellate counsel's "representation amounted to

4

incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 690). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

    2.  Petitioner Does Not Show That Appellate Counsel's Assistance Was Ineffective

Petitioner argues that use of the statements "violently extracted from [him]," Pet. at 10, was improper.  Because of the "coercive nature of the conversation" with Thompson, *id.*, petitioner argues that the recorded conversation and the statements contained therein should have been excluded, and had they been excluded, "the government would have had no evidence . . . that petitioner may have been in possession of a gun in the days or weeks prior to the crime charged." *Id.* at 9.  Notwithstanding "the obvious coercive nature of the conversation, the government used the statements of the recording" to effect his arrest and conviction, *id.* at 8, and appellate counsel's refusal to raise this argument "prejudiced petitioner during direct appeal," *id.* at 11.  Petitioner contends that "appellate counsel refused to raise the stronger and most obvious issues" on direct appeal, "electing instead to raise issues of less or no merit, reducing [his] chances of success and reducing the direct appeal . . . to a meaningless trivial process." *Id*. at 5.  He characterizes the government's case as "purely circumstantial," such that "there is a reasonable probability of reversal [of his criminal conviction] absent this disasterous [sic] omission on counsel's part." *Id*.

According to petitioner, the assault he sustained at Thompson's hands "made [his] statements involuntary," and this conclusion "is so very obviously pointed out and supported by

5

the record." Pet'r's Reply at 4.  He attributes counsel's failure to raise this issue to his "misunderstanding of physical coercion," and on the "mistaken belief that since petitioner had not confessed to the crime charged, it would be or could be ruled that petitioner's will had not been overborne." *Id.*  In other words, petitioner pins his hopes on the fact that the assault – regardless of its source, intensity or consequences – is conclusive proof that his will was overborne, rendering the statements involuntary and inadmissible.  *See* Pet'r's Reply at 7.

A criminal defendant's statement is involuntary if his will was overborne at the time he gave the statement.  *See United States v. Murdock*, 667 F.3d 1302, 1305 (D.C. Cir. 2012); *Columbe v. Connecticut*, 367 U.S. 568, 602 (1961) (stating that a confession is voluntary if it is "the product of an essentially free and unconstrained choice by its maker").  Relevant to a determination of voluntariness are the characteristics of the defendant and the circumstances of the interrogation.  *See id.* at 1305-06.  Such factors might include the age, education or intelligence of the individual, the length of his detention, the nature of the questioning, and the deprivation of food or sleep.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

Review of the record demonstrates that Detective George F. Blackwell of the Metropolitan Police Department asked Thompson to have a second conversation with petitioner, and instructed Thompson "this time to be more assertive . . . like he's on the street, [not] be passive like he was on the first meeting."  Pet., Ex. B (excerpt of transcript of grand jury proceedings on April 19, 2006) at 41:12-13.  Surveillance equipment was installed in Thompson's car, *id.*, Ex. B at 43:2-5, in order that the conversation be recorded on audiotape and videotape and monitored by Detective Blackwell, *id.*, Ex. B at 42:2-8.  At some early point in the conversation, Thompson hit petitioner, *see id.*, Ex. B at 44:6-11; *see also* Resp't's Opp'n, Ex. D (Transcript of recorded conversation) at 2-3, 5, yet the conversation continued.

6

Respondent represents, and petitioner does not dispute, that petitioner was not under arrest or in police custody on January 6, 2005, that the recorded conversation took place in a public place, that petitioner was accompanied by Sonya Jenkins (described as petitioner's girlfriend), and that petitioner was unaware of Thompson's agreement to cooperate with police. *See* Resp't's Opp'n at 19. Respondent further represents that the alleged assault occurred early in a 24-minute conversation, *see id.* at 19; *see also id.*, Ex. D at 3, and that petitioner and Thompson continued their conversation after the alleged assault without petitioner ever having changed his story -- petitioner admitted that he threw the gun Thompson gave him into the Patuxent River, and he denied that he killed his wife. *See generally id.*, Ex. D at 14-25. Nothing in the record suggests that petitioner sustained any injury during his encounter with Thompson, or that he was not free to leave, or that he was speaking to a law enforcement officer rather than to his friend.

The Court must look at the "totality of the circumstances" to determine the voluntary nature of a criminal defendant's statement. *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991); *see Mincey v. Arizona*, 437 U.S. 385, 401 (1978) (stating that the "[d]etermination of whether a statement is involuntary . . . requires careful evaluation of all the circumstances of the interrogation"). Missing from petitioner's case is any hint of coercion or "police overreaching." *Colorado v. Connelly*, 479 U.S. 157, 163 (1986). His conversation with Thompson bears no indicia of "coercive police conduct." *Id.* At no time during the recorded conversation does petitioner confess to murder, and the mere fact that Thompson hit him does not itself establish that petitioner's will had been overborne.

### III. CONCLUSION

Petitioner does not meet the high standard set forth under 28 U.S.C. § 2254(d)(1) because he fails to demonstrate that the adjudication of his claim by the District of Columbia courts resulted in a decision contrary to, or which involved an unreasonable application of clearly established law with respect to the voluntariness of the statements contained in the January 6, 2005 recorded conversation. Nor does petitioner show that appellate counsel's failure to raise the issue of coercion on direct appeal was deficient or prejudicial. Accordingly, the petition for a writ of habeas corpus is denied. An Order accompanies this Memorandum Opinion.

JOHN D. BATES
United States District Judge

DATE: June 27, 2012